# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP1753-CR & 2013AP1754-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent, |
| | v. |
| | Rogelio Guarnero, |
| | Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 354 Wis. 2d 307, 848 N.W.2d 329)
(Ct. App. 2014 – Published)
PDC No: 2014 WI App 56

| | |
|---|---|
| OPINION FILED: | July 9, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 10, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Timothy G. Dugan |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | BRADLEY, ABRAHAMSON, J.J., dissent. (Opinion Filed.) |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *Robert J. Eddington*, Milwaukee, and oral argument by *Robert J. Eddington*.

For the plaintiff-respondent, the cause was argued by *Sara Lynn Larson*, assistant attorney general, with whom on the brief was *Brad Schimel*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2013AP1753-CR & 2013AP1754-CR
(L.C. No.   2012CF2319 & 2012CF4088)

STATE OF WISCONSIN            :      IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent,**

    **v.**

**Rogelio Guarnero,**

    **Defendant-Appellant-Petitioner.**

**FILED**

**JUL 9, 2015**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals.  *Affirmed.*

¶1   PATIENCE DRAKE ROGGENSACK, C.J.   We review a decision of the court of appeals[1] that affirmed the circuit court's[2] conclusion that Rogelio Guarnero's prior federal RICO[3] conspiracy conviction served as a prior conviction under Wis. Stat.

---

[1] State v. Guarnero, 2014 WI App 56, 354 Wis. 2d 307, 848 N.W.2d 329.

[2] The Honorable Timothy G. Dugan of Milwaukee County presided.

[3] Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 (2005).

§ 961.41(3g)(c) (2011-12)[4] and therefore enhanced the penalty for his Wisconsin cocaine possession conviction. Under § 961.41(3g)(c), a court concludes that cocaine possession is a second offense when a statute under which the defendant previously was convicted relates to controlled substances. The circuit court considered the language of the RICO conspiracy statute and Guarnero's RICO indictment to reach its conclusion that the RICO conspiracy statute related to controlled substances and therefore enhanced Guarnero's cocaine possession to a second offense under § 961.41(3g)(c).[5]

¶2 Guarnero appealed, contending that the circuit court improperly enhanced the penalty for conviction of cocaine possession due to his prior RICO conspiracy conviction. Guarnero also argued that his felony bail-jumping conviction should have been a misdemeanor offense because his cocaine possession conviction should have been an unenhanced misdemeanor. The court of appeals affirmed the circuit court, concluding that RICO and 18 U.S.C. § 1962(c) and (d) (2005)[6] related to controlled substances. State v. Guarnero, 2014 WI App 56, ¶8, 354 Wis. 2d 307, 848 N.W.2d 329.

---

[4] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

[5] A second or subsequent offense is a Class I felony. Wis. Stat. § 961.41(3g)(c).

[6] All subsequent references to the United States Code are to the 2005 version unless otherwise indicated.

¶3   We conclude that Guarnero's prior conviction, due to the manner in which Guarnero violated the RICO conspiracy statute, relates to controlled substances.   Therefore, Guarnero's prior RICO conviction enhances the penalty for cocaine possession under Wis. Stat. § 961.41(3g)(c) to a second offense as a Class I felony.   We further conclude that Guarnero's bail-jumping offense is properly a felony conviction. Accordingly, we affirm the court of appeals decision that affirmed the circuit court's denial of Guarnero's motion to dismiss and motion for postconviction relief.[7]

## I.   BACKGROUND

¶4   In 2005, a grand jury issued a 38-count indictment in the United States District Court for the Eastern District of Wisconsin, alleging that 49 members of the Milwaukee chapter of the Latin Kings violated RICO.   Guarnero was one of the 49 individuals indicted.   He was personally charged with five of the 38 counts:   counts 2, 20, 24, 25 and 26.

¶5   Count Two of the indictment alleged that Guarnero and others were members or associates of the Latin Kings, a criminal racketeering organization that "engaged in acts of violence, including murder, attempted murder, robbery, extortion and distribution of controlled substances."   Count Two of the indictment   also   alleged   that   Guarnero   knowingly   and

---

[7] Guarnero, 354 Wis. 2d 307, ¶¶12, 14.

intentionally conspired with others to violate 18 U.S.C. § 1962(c):

> [T]o conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity involving . . . multiple acts involving the distribution of controlled substances including cocaine, cocaine base in the form of "crack" cocaine and marijuana in violation of the laws of the United States[.]

The indictment continued: "It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise," and that this conduct violated 18 U.S.C. § 1962(d). Guarnero was charged with four other counts that involved possession of marijuana and firearms.

¶6 Guarnero pled guilty to conspiracy of violating RICO as set out in Count Two, and the United States dismissed the remaining counts of the indictment. The plea agreement contained a section titled "Elements," which stated:

> The parties understand and agree that in order to sustain the charge of Conspiracy to Commit RICO as set forth in Count Two, the government must prove each of the following propositions beyond a reasonable doubt:
>
> First, that the defendant knowingly conspired to conduct or participate in the conduct of the affairs of the Milwaukee Latin Kings, an enterprise, through a pattern of racketeering activity as described in Count Two;
>
> Second, that the Milwaukee Latin Kings were an enterprise; and
>
> Third, that the activities of the Milwaukee Latin Kings would affect interstate commerce.

4

Guarnero's plea agreement acknowledged that Guarnero had conspired to commit at least two qualifying criminal acts, but the plea agreement did not specify which acts he had committed. The plea agreement also contained Guarnero's admission that police officers found marijuana in his apartment while they executed a firearm search warrant at Guarnero's residence.

¶7 In August 2012, Guarnero was arrested for possession of cocaine in violation of Wis. Stat. § 961.41(3g)(c), which contains an enhanced penalty provision. The provision enhances the penalty for a cocaine possession conviction to a second or subsequent offense if the defendant has previously "been convicted of any felony or misdemeanor under this chapter or under any statute of the United States or of any state relating to controlled substances." § 961.41(3g)(c). The complaint listed Guarnero's RICO conspiracy conviction, noted that it was related to controlled substances, and listed the cocaine possession as a felony second or subsequent offense contrary to § 961.41(3g)(c).

¶8 Guarnero filed a motion to dismiss the cocaine possession charge, arguing that his prior RICO conviction could not serve as a prior conviction to enhance the penalty for cocaine possession conviction to a second offense under Wis. Stat. § 961.41(3g)(c). The circuit court denied Guarnero's motion to dismiss. The court recognized the many possible bases for RICO convictions and concluded that RICO was related to controlled substances because of the specific charges in Count Two of the indictment. Guarnero petitioned for leave to take an

5

interlocutory appeal of the circuit court's denial of his motion to dismiss. The court of appeals denied leave.[8]

¶9 Subsequently, the circuit court found Guarnero guilty of violating Wis. Stat. § 961.41(3g)(c). Guarnero stipulated to the facts of his possession of cocaine and his prior RICO conspiracy conviction. Under the § 961.41(3g)(c) enhancement, Guarnero's cocaine possession constituted a felony. The court also convicted Guarnero of felony bail jumping, an offense that occurred while Guarnero was on bail for the felony cocaine possession charge.

¶10 Guarnero moved for postconviction relief, which the circuit court denied. The circuit court concluded that a "RICO conviction can deal with drug-related activity or not be related to drugs or drug activity." The court also noted that "count two of the federal indictment related to distribution of controlled substances, including cocaine and other drugs."

¶11 The court of appeals affirmed the circuit court orders. Guarnero, 354 Wis. 2d 307, ¶¶1, 14. The court referred to Guarnero's guilty plea and held that the RICO conspiracy statute related to controlled substances. Id., ¶12. The court rejected Guarnero's arguments based on the rule of lenity and due process. Id., ¶13. The court of appeals also affirmed Guarnero's conviction for felony bail jumping. Id., ¶14.

---

[8] At that time, the court of appeals also denied Guarnero's motion to consolidate Milwaukee County Circuit Court Case Nos. 12CF2319 and 12CF4088. The court of appeals later consolidated the cases on August 20, 2013.

6

## II.  DISCUSSION

### A.  Standard of Review

¶12  We review the court of appeals' affirmance of the circuit court's denial of Guarnero's motion to dismiss and motion for postconviction relief in which Guarnero argued that his prior RICO conspiracy conviction was not related to controlled substances under Wis. Stat. § 961.41(3g)(c).  In order to review the questions presented, we interpret § 961.41(3g)(c).  Statutory interpretation presents a question of law that we independently review, while benefitting from the discussions of the court of appeals and the circuit court. Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶14, 309 Wis. 2d 541, 749 N.W.2d 581.

### B.  Statutory Interpretation

¶13 Our review focuses on whether a federal RICO conspiracy conviction is related to controlled substances so that it may serve as a prior conviction triggering penalty enhancement for a cocaine possession conviction under Wis. Stat. § 961.41(3g)(c).  When we interpret a statute, we "begin[] with the language of the statute.  If the meaning of the statute is plain, we ordinarily stop the inquiry." State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (internal quotation marks and citation omitted). We give statutory language its "common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id.

7

¶14 Our focus is on "relating to controlled substances" in Wis. Stat. § 961.41(3g)(c), the statute that prohibits possession of cocaine, which provides:

> Cocaine and cocaine base.  If a person possess[es] or attempts to possess cocaine or cocaine base, or a controlled substance analog of cocaine or cocaine base, the person shall be fined not more than $5,000 and may be imprisoned for not more than one year in the county jail upon a first conviction and is guilty of a Class I felony for a 2nd or subsequent offense.  For purposes of this paragraph, an offense is considered a 2nd or subsequent offense if, prior to the offender's conviction of the offense, the offender has at any time been convicted of any felony or misdemeanor under this chapter or under any statute of the United States or of any state relating to controlled substances, controlled substance analogs, narcotic drugs, marijuana, or depressant, stimulant, or hallucinogenic drugs.

¶15 The statutory phrase, "relating to controlled substances," in Wis. Stat. § 961.41(3g)(c) is undefined.  As the words the legislature chose are not technical or specially-defined, we give them their "common, ordinary, and accepted meaning."  Id., ¶45.

¶16 In order to determine the common meaning of "relating to," we turn to a dictionary definition of "relate."  Id., ¶54 (referring to the dictionary definition of statutory language with a common meaning).  "Relate" is defined as a "connection, relation, or reference."  The American Heritage Dictionary of the English Language 1482 (5th ed. 2011).  We conclude that Wis. Stat. § 961.41(3g)(c) requires that the prior conviction be connected to controlled substances if a prior conviction is to trigger penalty enhancement under § 961.41(3g)(c).

8

¶17 Our interpretation of "relating to" is consistent with the court of appeals' interpretation of "relating to controlled substances" in State v. Moline, 229 Wis. 2d 38, 598 N.W.2d 929 (Ct. App. 1999).[9]  In Moline, the parties advanced technical interpretations of the phrase, "relating to controlled substances," that were grounded in punctuation and grammatical nuances.  Id. at 41-42.  The court rejected technical interpretations in favor of a commonsense reading of "relating to" and concluded that Moline's prior conviction for possession of drug paraphernalia was "linked" to controlled substances. Id. at 42.  We interpret Wis. Stat. § 961.41(3g)(c) as requiring the prior conviction, here RICO conspiracy, to be connected to or linked to controlled substances, just as possession of drug paraphernalia was in Moline.[10]

---

[9] In State v. Moline, 229 Wis. 2d 38, 41-42, 598 N.W.2d 929 (Ct. App. 1999), the court of appeals interpreted "relating to controlled substances" as used in Wis. Stat. § 961.48(3), which includes the same penalty enhancement structure as Wis. Stat. § 961.41(3g)(c).

[10] After oral argument, we ordered the parties to provide supplemental briefs on an issue that Guarnero asserted the State raised for the first time at oral argument.  He asserted that at oral argument the State first argued that "18 U.S.C. § 841(b)(1)(C)" in the RICO judgment of conviction was a scrivener's error and the correct statute was 21 U.S.C. § 841(b)(1)(C).    21 U.S.C. § 841(b)(1)(C) lists controlled substances offenses and penalties.

(continued)

9

C.  Application to Federal RICO Conspiracy

¶18  We next apply our interpretation of "relating to controlled substances" in Wis. Stat. § 961.41(3g)(c) to Guarnero's prior conviction for a RICO conspiracy.  Guarnero was convicted of 18 U.S.C. § 1962(d), which causes conspiring to violate subsections (a), (b), and (c) to be unlawful.  18 U.S.C. § 1962(d).  Each subsection, (a) through (c), involves racketeering activity[11] and serves to link RICO conspiracy with racketeering activities that could involve controlled substances.[12]

¶19  The definition of racketeering activity lists many qualifying offenses, including "dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act)" and "the felonious manufacture,

_____

In supplemental briefing, Guarnero contended that the scrivener's error was the inclusion of a reference to § 841(b)(1)(C), regardless of the chapter number.  Guarnero argues that he pled guilty and was convicted of Count Two of the federal indictment that included 18 U.S.C. § 1962(d), a RICO conspiracy charge, and that the reference to 18 U.S.C. § 841(b)(1)(C) was in error.  However, neither the State's reference at oral argument nor Guarnero's discussion in supplemental briefing affects our approach to the issues presented by the parties to this review.

[11] Subsections of 18 U.S.C. § 1962 involve a pattern of racketeering activity:  (a) deriving income from racketeering activity; (b) acquiring interest in an enterprise through racketeering activity; or (c) participating in an enterprise through racketeering activity.

[12] Count Two of Guarnero's RICO indictment clarifies that Guarnero's conspiracy charge was based on Guarnero conspiring to violate 18 U.S.C. 1962(c).

importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States." 18 U.S.C. § 1961(1)(A) & (D). RICO conspiracy can be related to controlled substances for the purposes of Wis. Stat. § 961.41(3g)(c) because RICO conspiracy in 18 U.S.C. § 1962(d) is connected to controlled substances through the racketeering activity definition, § 1961(1)(A) and (D).

¶20 However, we determine which racketeering activity supports Guarnero's RICO conspiracy conviction, because only some of the multiple definitions of racketeering activity in 18 U.S.C. § 1961(1) are linked to controlled substances. Such a determination is necessary to ascertain whether the unlawful conduct underlying his prior conviction is related to controlled substances. For example, were we not to consider the unlawful conduct that gave rise to the RICO conviction, a defendant convicted of RICO conspiracy based on sports bribery could have his or her penalty erroneously enhanced under Wis. Stat. § 961.41(3g)(c) because sports bribery fits within the definition of racketeering activity, but is not related to controlled substances. See 18 U.S.C. § 1961(1)(B).

¶21 When the statute underlying a prior conviction presents alternative methods of violating the statute, it is appropriate to consult a limited class of documents to determine what statutory alternative formed the basis for the defendant's prior conviction. See Descamps v. United States, __ U.S. __,

11

133 S. Ct. 2276, 2285 (2013). In this case, we can glean the necessary information from Guarnero's RICO conspiracy plea, which incorporates Count Two of his RICO indictment.

¶22 Guarnero's RICO conspiracy plea shows that he was convicted of RICO conspiracy based on racketeering activity involving controlled substances. To explain further, Guarnero's plea agreement contained his admission that as a member of the Latin Kings he engaged in acts that included the "extortion and distribution of controlled substances" because Count Two of the indictment is attached to his plea agreement. Count Two provides that, as a member of the Latin Kings, he "engaged in" the "distribution of controlled substances." These documents confirm that the method of racketeering activity that underlies the RICO conspiracy of which Guarnero was convicted related to controlled substances. Because Guarnero's RICO conspiracy conviction was related to controlled substances within the meaning of Wis. Stat. § 961.41(3g)(c), the penalty for Guarnero's cocaine possession conviction was properly enhanced.[13]

---

[13] In a recent Supreme Court opinion, Mellouli v. Lynch, __ U.S. __, 135 S. Ct. 1980 (2015), the Court discussed whether conviction of a state crime is a deportable offense. Id. at 1982-83. Mellouli focused on whether the controlled substance that resulted in a state conviction was a controlled substance "included in one of five federal schedules." Id. at 1984. It has no application here, as it does not focus on determining which of several statutory alternatives formed the basis for the defendant's prior conviction.

D.  Sixth Amendment

¶23 Guarnero also contends that his Sixth Amendment rights were violated by the court's examination of more than the elements of his RICO conviction, rather than a jury's consideration of the facts underlying his RICO conviction. Under the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI.

¶24 The United States Supreme Court has held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). The Court stated that the sole exception is the fact of a prior conviction. Id. The Court revisited this concern in Shepard v. United States, 544 U.S. 13 (2005). There, in reviewing a plea, the Court approved use of the charging document, plea agreement or transcript of a plea colloquy, but only to assess whether Shepard pled to violating the statute by a method that permitted the penalty to be enhanced under the Armed Career Criminal Act. Id. at 25-26. The transcript was not to be used "to determine 'what the defendant and state judge must have understood as the factual basis of the prior plea.'" Descamps, 133 S. Ct. at 2284 (quoting Shepard, 544 U.S. at 25).

¶25 In State v. LaCount, 2008 WI 59, 310 Wis. 2d 85, 750 N.W.2d 780, we considered the effect of Apprendi and Shepard on

13

a circuit court's role in determining whether a prior conviction provided the basis for enhancing a defendant's sentence.

> The Shepard decision relaxed the holdings of . . . Apprendi . . . so that, when Shepard and Apprendi are read together, a trial court judge, rather than a jury, is allowed to determine the applicability of a defendant's prior conviction for sentence enhancement purposes, when the necessary information concerning the prior conviction can be readily determined from an existing judicial record.

Id., ¶52.[14]  In our review of whether Guarnero's prior RICO conspiracy conviction applied to enhance his cocaine possession conviction, we rely on necessary information from Guarnero's existing judicial record, his guilty plea.  Our examination of Guarnero's guilty plea did not violate Guarnero's Sixth Amendment right because it is consistent with the principles underlying Apprendi and Shepard as we explained in LaCount.  Id.

### E.  Rule of Lenity

¶26 Guarnero further asserts that the meaning of the phrase, "relating to controlled substances," in Wis. Stat. § 961.41(3g)(c) is ambiguous; and accordingly, the rule of lenity requires that the ambiguity be resolved in his favor. The rule of lenity provides that when doubt exists as to the meaning of a criminal statute, "a court should apply the rule of lenity and interpret the statute in favor of the accused." State v. Cole, 2003 WI 59, ¶13, 262 Wis. 2d 167, 663 N.W.2d 700.

---

[14] Descamps v. United States, __ U.S. __, 133 S. Ct. 2276, 2288 (2013) confirms our conclusion in State v. LaCount, 2008 WI 59, 310 Wis. 2d 85, 750 N.W.2d 780.

14

Stated otherwise, the rule of lenity is a canon of strict construction, ensuring fair warning by applying criminal statutes to "conduct clearly covered." United States v. Lanier, 520 U.S. 259, 266 (1997); see also United States v. Castleman, __ U.S. __, 134 S. Ct. 1405, 1416 (2014) (addressing the need for fair warning implicit in the rule of lenity).

¶27 However, the rule of lenity applies if a "grievous ambiguity" remains after a court has determined the statute's meaning by considering statutory language, context, structure and purpose, such that the court must "simply guess" at the meaning of the statute. Castleman, 134 S. Ct. at 1416; see Kalal, 271 Wis. 2d 633, ¶¶45-46. Here, applying the rule of lenity is unnecessary. There is no "grievous ambiguity" or uncertainty in Wis. Stat. § 961.41(3g)(c) that would cause a court to "simply guess" as to the meaning of the statute. Castleman, 134 S. Ct. at 1416. There is no grievous ambiguity in § 961.41(3g)(c), in 18 U.S.C. § 1961(1)(A)&(D), or in 18 U.S.C. § 1962(d). Accordingly, we do not apply the rule of lenity.

### F. Due Process

¶28 As a final argument, Guarnero contends that he did not have fair notice that his guilty plea to the RICO conspiracy charge could subject him to sentence enhancement in a subsequent criminal case because no Wisconsin case had held such a conviction related to controlled substances. "[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior

15

judicial decision has fairly disclosed to be within its scope."
<u>Lanier</u>, 520 U.S. at 266.

¶29 Guarnero's contention misses his mark in at least two respects.  First, our construction of Wis. Stat. § 961.41(3g)(c) is not "novel," but rather, a commonsense reading of the words the legislature chose.  Second, <u>Moline</u> explained that "[i]f it is found to be related to drugs, it is very clearly an offense which may serve as the basis for an enhanced penalty."  <u>Moline</u>, 229 Wis. 2d at 42.  Our statutory interpretation herein is consistent with <u>Moline</u> where the same plain language, "relating to controlled substances" that appears in § 961.41(3g)(c) was interpreted in Wis. Stat. § 961.48(3), thereby giving notice of conduct that could result in sentence enhancement.  Accordingly, due process does not bar enhancement of Guarnero's conviction under § 961.41(3g)(c).[15]

---

[15] In a recent Supreme Court opinion, <u>Johnson v. United States</u>, 576 U.S. __ (2015), the Court discussed whether part of the "residual clause" of the Armed Career Criminal Act (ACCA) that provides, "otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague, in violation of the due process clause. <u>Johnson</u>, 576 U.S. __, at 5.  <u>Johnson</u> is of even passing consideration here because a line of ACCA cases is analogous to the approach we have taken:  choosing between examination solely in terms of how the law defines an offense, or examination of a limited class of documents to determine what statutory alternative formed the basis for the defendant's prior conviction.  <u>See</u> <u>United States v. Castleman</u>, __ U.S. __, 134 S. Ct. 1405, 1413-14 (2014).  The differing approaches apply to different parts of the ACCA language.  <u>Id.</u> at 1409, 1413-14; <u>Johnson</u>, 576 U.S. __, at 4.  The former approach applies to 18 U.S.C. § 924(e)(2)(B)(ii) and the latter applies to 18 U.S.C. § 924(e)(2)(B)(i).  The Court does not decide between the two approaches.

(continued)

### III. CONCLUSION

¶30  We conclude that Guarnero's prior conviction, due to the manner in which Guarnero violated the RICO conspiracy statute, relates to controlled substances.   Therefore, Guarnero's prior RICO conviction enhances the penalty for cocaine possession under Wis. Stat. § 961.41(3g)(c) to a second offense as a Class I felony.   We further conclude that Guarnero's bail-jumping offense is properly a felony conviction. Accordingly, we affirm the court of appeals decision that affirmed the circuit court's denial of Guarnero's motion to dismiss and motion for postconviction relief.

*By the Court.*—The decision of the court of appeals is affirmed.

---

The Court's vagueness concerns centered on the necessity of imagining whether an "ordinary case" of a particular crime involved sufficient risk.  *Johnson*, 576 U.S. __, at 5.   The Court mentioned one of the federal analogs to our analysis in passing, essentially noting that because *Johnson* was a § 924(e)(2)(B)(ii) case, the "solely in terms of the law" approach applied.  *Johnson* does not affect the validity of the alternate approach, which mirrors the analysis here.

¶31 ANN WALSH BRADLEY, J. *(dissenting).* In reading the five paragraphs of the majority's brief statutory analysis, one would never guess that the issue presented is one of first impression in this state. The petition for review states the issue as follows: Did the court of appeals err when it looked "beyond the statutory elements of Guarnero's prior racketeering conspiracy conviction and conclude that his prior conviction was a second or subsequent offense."

¶32 Nor would one likely guess that in a one-sentence pronouncement, tucked away in its application discussion, the majority actually answers this question of first impression—without any acknowledgement that it is doing so and without any analysis whatsoever.

¶33 Our responsibility to develop and clarify the law is not well served by the majority's failure to acknowledge the issue and subject it to analysis. It is particularly problematic because this issue is not only one of first impression but also one of statewide importance having the potential to affect the interpretation of numerous criminal statutes.

¶34 The court of appeals forthrightly addressed the issue and after a thorough analysis adopted an approach called the modified categorical approach, meaning in essence that in applying "related to" a court may look beyond the statutory elements of the conviction to limited extraneous documents. The court of appeals, however, did not have the benefit of the most recent United States Supreme Court decision, which, along with

other precedent, appears to suggest a contrary result. The majority has the benefit of Mellouli v. Lynch, 135 S. Ct. 1980 (2015), decided June 1, 2015, but its opinion fails to discuss it, referencing the case only briefly in a single footnote.

¶35 Regardless of whether we adopt as a matter of first impression the categorical approach (looking to the elements only) or a modified categorical approach (looking beyond the elements to extraneous documents), one thing is clear: neither the statute, Wis. Stat. § 961.41(3g)(c), nor its legislative history answers the question. They are silent on the issue of how broadly or narrowly the term "related to" should be defined.

¶36 Because it is unclear if "related to" should be narrowly construed, limited to looking only at the statutory elements, or more broadly construed, looking beyond the elements, the statute is ambiguous. Given the ambiguity, I would apply the rule of lenity which dictates that ambiguity in penal statutes be interpreted in favor of the defendant. Accordingly, I respectfully dissent.

I

¶37 The majority's statutory analysis of Wis. Stat. § 961.41(3g)(c) is truncated. Consisting of a mere five paragraphs, it is limited to consulting a dictionary definition of "relate" and a case addressing the interpretation of "relate" with respect to a different prior offense. Majority op., ¶¶13-17.

¶38 Based on its determination that "relating to" means "connected with" or "linked to" the majority determines that the

2

statutory language is clear. Tucked away in its application discussion, and without analysis, the majority makes a one-sentence pronouncement that answers the issue of first impression without acknowledging that it is doing so. It chooses the modified categorical approach, allowing for looking beyond the statutory elements to a limited class of other documents: "[w]hen the statute underlying a prior conviction presents alternative methods of violating the statute, it is appropriate to consult a limited class of documents to determine what statutory alternative formed the basis for the defendant's prior conviction." Id., ¶21.

¶39 Ultimately the majority declines to follow the rule of lenity, which dictates that ambiguous or uncertain penal statutes be interpreted in favor of defendants. Having determined that the statutory language is clear, it concludes that the rule of lenity does not apply. Id., ¶27.

II

¶40 The majority's analysis of the statutory language begs the question. Just as "relating to" fails to inform how broadly or narrowly those words should be defined, so do the substitute words "connected with" and "linked to." They are mere synonyms, providing no additional insight into how broadly or narrowly the term "relating to" should be defined.

¶41 We are left to question if a reference to controlled substances in a document relating to the conviction will suffice to render it a conviction relating to a controlled substance, or if the involvement of controlled substances must be an element

3

proved in obtaining the conviction. Thus, defining the words "relating to" as "to be connected with or linked to" does not answer the issue before us: Did the court of appeals err when it looked "beyond the statutory elements of Guarnero's prior racketeering conspiracy conviction and conclude that his prior conviction was a second or subsequent offense?"

¶42 The parties debate between two possible approaches for answering this issue. Guarnero contends that the categorical approach should govern. Under that approach, a court's inquiry into a past conviction is limited to considering the elements of the statute violated. If a relationship to controlled substances is not required in order for there to be a conviction under the statute, then it could not be considered a conviction relating to controlled substances.

¶43 In contrast, the State advocates for the modified categorical approach. That approach would permit the court to consult a limited number of extraneous documents to determine if the prior conviction involved controlled substances.

¶44 This court has not previously addressed the debate over whether to adopt the categorical approach or the modified categorical approach. The issue is one of first impression that may have far-reaching effects due to the host of Wisconsin statutes depending on the characterization of prior offenses. See, e.g., Wis. Stat. §§ 939.615(2)(b), 939.618(2), 939.619(2), 940.43(5), 940.45(5).

¶45 Ignoring the debate, the majority takes an approach that appears to be contrary to the well-established approach

4

recently affirmed by the United States Supreme Court, without any explanation why. Without commenting on the lengthy briefing and murky case law on this issue, and without acknowledging it as an issue, the majority addresses it in a single sentence. It announces "[w]hen the statute underlying a prior conviction presents alternative methods of violating the statute, it is appropriate to consult a limited class of documents to determine what statutory alternative formed the basis for the defendant's prior conviction." Majority op., ¶21 (citing Descamps v. United States, 133 S. Ct. 2276, 2285 (2013)).

¶46 A recent pronouncement of the United States Supreme Court suggests this is error.

¶47 In Mellouli v. Lynch, 135 S. Ct. 1980 (June 1, 2015), the Supreme Court considered whether a state drug conviction qualified as a law "relating to a controlled substance" under a federal deportation statute, 8 U.S.C. § 1227(a)(2)(B)(i). The Court observed that the definition of "controlled substance" in the state law included at least nine substances not included in the federal list of controlled substances. Id. at 1984, 1988.

¶48 The Court also acknowledged that there is a long history of limiting an assessment of a conviction to the language of the statute and disallowing an examination of the facts underlying the crime. Id. at 1986-87. Following that history, the Court did not use the modified categorical approach of consulting extraneous documents. Rather, it focused on the words of the statutes and determined that because the definition of controlled substances in the state law was broader than that

5

in the federal law, the state crime did not constitute a conviction relating to controlled substances. Id. at 1988.

¶49 This case appears analogous to Mellouli. As with Mellouli, the statute that the defendant previously violated, 18 U.S.C. § 1962(d), contains a phrase that is broadly defined such that a conviction under the statute may or may not be a prior conviction relating to controlled substances.[1] As with Mellouli, the face of the statute Guarnero violated does not reveal which portion of the definition was the basis for his conviction. Thus, there is a strong implication that like Mellouli, the analysis should end there with the conclusion that Guarnero's prior conviction does not qualify as a crime relating to controlled substances. Extraneous documents relating to his conviction should not be consulted.

¶50 Rather than analyzing this case law, the majority supports its approach with a single citation, "See Descamps v. United States." Majority op., ¶21. However, Descamps does not clearly support its decision to use the modified categorical approach because it clarifies that the approach applies only in limited circumstances.

¶51 In Descamps the Court considered whether the violation of a state statute prohibiting burglary qualified as a violent felony under the Armed Career Criminal Act (ACCA). 133 S. Ct. 2276. The state statute at issue contained a broader definition

---

[1] The definition of "racketeering activity," refers to approximately 90 different crimes, including some involving controlled substances. 18 U.S.C. § 1961(1).

of burglary than the definition in the ACCA. The Court observed that when a state law defines a crime in the alternative, a court may "examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." Id. at 2284. However, it stressed that this approach, referred to as the modified categorical approach, applies only to a "narrow range of cases." Id. at 2283-84 (citing Taylor v. United States, 495 U.S. 575 (1990)). "Our decisions authorize review of the plea colloquy or other approved extra-statutory documents only when a statute defines burglary not (as here) overbroadly, but instead alternatively . . . ." Id. at 2286.

¶52 Ultimately the Descamps Court determined that the modified categorical approach was inapplicable to the state statute it was considering because the statute merely defined burglary more broadly than the federal statute and did not contain alternative elements. Id. at 2285. Because an individual could violate the state statute without committing a violent felony, the court concluded that the state conviction could not qualify as a violent felony conviction. Id.

¶53 The majority makes no attempt to determine whether a crime involving a controlled substance was an element of Guarnero's RICO conviction or was merely part of a broad definition of "racketeering activity." Descamps and Mellouli stress this is an important distinction because a court may not

apply the modified categorical approach where there is merely a broadly defined term.[2]

                                    III

¶54 Regardless if it is determined as a matter of first impression that the categorical approach or the modified approach controls, I determine that the rule of lenity should be applied here.

¶55 As the United States Supreme Court has stated, "construction of a criminal statute must be guided by the need for fair warning." Crandon v. United States, 494 U.S. 152, 160 (1990). The rule of lenity "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." United States v. Lanier, 520 U.S. 259, 266 (1997). Thus, when a criminal statute is ambiguous and is not clarified by resort to legislative history, that penal statute "should be construed strictly against the party seeking

---

[2] The United States Supreme Court has also recently reaffirmed that courts must use the categorical approach when deciding whether a conviction constitutes a prior conviction for a violent felony under the Armed Career Criminal Act. Johnson v. United States, No. 13-7120, 576 U.S. ___ (June 26, 2015). Both the majority and the dissent in Johnson analyzed the issue of which approach should be applied. The dissent advocated for the modified categorical approach, but the majority of the Court decided otherwise. In choosing between the two approaches it stated: "'[T]he only plausible interpretation' of the law, therefore, requires use of the categorical approach." Id. (quoting Taylor v. United States, 495 U.S. 575, 602 (1990).

The analysis and discussion of the issue by both the majority and the dissent likewise reaffirms that selecting an approach requires a more detailed analysis than the majority's single sentence.

to exact statutory penalties and in favor of the person on whom statutory penalties are sought to be imposed." State v. Morris, 108 Wis. 2d 282, 289, 322 N.W.2d 264 (1982).

¶56 Here, the legislative history does not shine any light on our inquiry. Although Wis. Stat. § 961.41(3g)(c) has been renumbered, the language at issue in this case has been almost unchanged since its initial enactment in 1971.[3] It was enacted as part of Wisconsin's Uniform Controlled Substances Act. That Act was "a product of the National Conference of Commissioners on Uniform State Laws (NCCUSL)." State v. Hansen, 2001 WI 53, ¶16, 243 Wis. 2d 328, 627 N.W.2d 195. Where the legislature enacts a uniform act provision, we consider the intent of the drafters of the uniform law, and "will presume the intent of the drafters is the intent of the legislature in the absence of evidence to the contrary." Id. A review of the comments, however, provides no guidance here because they do not address how "relating to" should be defined. See NCCUSL, Uniform Controlled Substances Act § 408, Comment (1970), in Handbook of

---

[3] Wisconsin Stat. § 161.41(2r)(b) (1971) stated:

> For purposes of this subsection, an offense is considered a 2nd or subsequent offense if, prior to his conviction of the offense the offender has at any time been convicted under this chapter or under any statute of the United States or of any state relating to controlled substances, narcotic drugs, marijuana or depressant, stimulant or hallucinogenic drugs.

The only difference between this language and the current version of Wis. Stat. § 971.41(3g)(c) is that the words "any felony or misdemeanor under this chapter" have been inserted into the description of a conviction.

9

the National Conference of Commissioners on Uniform State Laws and Proceedings of the Annual Conference Meeting in its Seventy-Ninth Year (1970); NCCUSL, Uniform Controlled Substances Act § 413, Comment (1990), in Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Annual Conference Meeting in its Ninety-Ninth Year (1990); NCCUSL, Uniform Controlled Substances Act § 413, Comment (1994), available at www.uniformlaws.org/shared/docs/controlled%20substances/UCSA_fin al%20_94%20with%2095amends.pdf.

¶57 Given the ambiguity in the statute which is left unanswered by the legislative history, the majority should have applied the rule of lenity. There are two criteria for application of the rule of lenity: "(1) the penal statute is ambiguous; and (2) [a court is] unable to clarify the intent of the legislature by resort to legislative history." State v. Luedtke, 2015 WI 42, ¶73, 362 Wis. 2d 1, 863 N.W.2d 592.

¶58 As discussed above, both of these requirements are met. We have oft stated that "a statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." State ex rel. Kalal v. Circuit Court, 2004 WI 58, ¶47, 271 Wis. 2d 633, 681 N.W.2d 110. Wisconsin Stat. § 961.41(3g)(c) can reasonably be interpreted in two ways: one that looks beyond the statutory elements, and one that considers only the statutory elements. In other words, one in which a reference to controlled substances in extraneous documents relating to a conviction could suffice to render it a

10

conviction relating to a controlled substance, or one in which the involvement of controlled substances must be an element proved in obtaining the conviction. Therefore the statute is ambiguous.

¶59 The legislative history is silent on the issue. As a result, the court is unable to clarify the intent of the legislature by resort to legislative history. Having met both requirements, application of the rule of lenity is appropriate and Guarnero's RICO conviction should not be considered a prior conviction relating to controlled substances.

¶60 Accordingly, for the reasons set forth above, I respectfully dissent.

¶61 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.